**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
02/22/2017

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| **PRIMROSE LA SARA, LLC** | § | **CASE NO. 16-30822** |
| | § | **CHAPTER 7** |
| | § | |
| **LA SARA OPERATING COMPANY, LLC** | § | **CASE NO. 16-30453** |
| | § | **CHAPTER 7** |
| | § | |
| **DEBTORS** | § | **CHIEF JUDGE DAVID R. JONES** |

## ORDER OF SALE

(Docket Numbers 113 and 133 in Case No. 16-30822)
(Docket Numbers 58 and 76 in Case No. 16-30453)

1. On November 2, 2016, the Trustee filed her Trustee's Expedited Motion For: (a) Authority to Sell Property Free and Clear of Liens and Claims by Auction, (b) Approval of Bidding Procedures and Designation of Stalking Horse Bidder, (c) Establishment Of Inspection Procedures, and (d) Motion to Extend Deadline to Assume Or Reject Executory Contracts and for Authority To, Assume and Assign Executory Contracts in Connection with Sale at Docket Numbers 113 and 58 in the above-styled bankruptcy cases. On December 23, 2016, the Trustee filed her supplement to this motion at Docket Numbers 133 and 76 in the above-styled bankruptcy cases. These pleadings are collectively referred to herein at the "Sale Motion". The Sale Motion sought approval of the sale of the following assets (hereafter collectively the "Assets" [1]) to the bidder making the highest and best offer for the purchase thereof:

   a) <u>Working Interest Assets</u>: The term "Working Interest Assets" shall mean any and all oil and gas leases in which Seller possess any right, claim, or interest in Willacy County, Texas, and/or Kennedy County, Texas and including but not limited to the 34.5% working interest(s) referenced and described in Schedule B (Docket No. 13) in the Primrose Case (collectively, the "Working Interest Assets") and in various other pleadings filed in the Bankruptcy Case; ***save and except*** interests that run with the land. The Working Interests Assets shall further include the following:

   i. the interests in any units or pooled or communitized lands arising on account of the Working Interests Assets; having been unitized or pooled into such units or with such lands (Seller's interests in such units, the "Unit Interests") (the Working Interest Assets and the Unit Interests are referred to hereinafter as the "Properties");

   ii. all existing (on or after the date of this Agreement but prior to closing) wells on or attributable to the Properties;

   iii. all saltwater disposal leases and all saltwater disposal wells located on such saltwater disposal leases contained within the Properties, and any other interest of Seller in any saltwater disposal wells;

---

[1] Any terms not otherwise defined herein shall have the same meaning as ascribed to such terms in the Sale Motion.

SALE ORDER — Page 1   [Sale Order - Final + POST HEARING 20170216 (1298784-6).docx]



    iv.    the interest of the Seller in, to, and against all production facilities, structures, tubular goods, well equipment, lease equipment, production equipment, pipelines, inventory, and all other personal property, fixtures and facilities to the extent appurtenant to or used in connection with the Properties (the "Facilities");

    v.    to the extent assignable at no cost to Seller, the interest of the Seller in, to, and against all permits, licenses, servitudes, easements, rights-of-way, surface fee interests and other surface use agreements to the extent used in connection with the ownership or operation of the Properties or the Facilities;

    vi.    the hydrocarbons produced from or attributable to the Properties from and after closing and all hydrocarbons produced therefrom prior to closing that are in storage prior to sale and that are upstream of the sales metering point as of closing;

    vii.    all surface rights related to or appurtenant to the Properties;

    viii.    the interest of the Seller in, to, and against any insurance claims or indemnity rights relating to the Properties;

    ix.    any production or payment rights associated with the Working Interest Assets whenever accrued not otherwise described above;

    x.    the interest of Seller in the current joint operating agreement ("JOA") covering and applicable to the Working Interest Assets;

    xi.    any books, records, or other documents related to the Properties in the possession, custody, and/or control of the Seller including but not limited to:

        1. the well schematics, well bore logs;

        2. all records, files, contracts, orders, agreements, permits, licenses (including all 2D and 3D seismic licenses and data pertaining to the Properties), easements, maps, data, schedules, reports and logs relating to the Properties;

        3. all intellectual property, including all copyrights, patents and trademarks, owned, used or licensed by Seller in connection with the Properties and used or held for use exclusively in the ownership and operation of the Properties, including, for the avoidance of doubt all seismic, geological, geochemical or geophysical data owned or licensed by Seller and any of Seller's interpretations of such data, including all interpretations and analysis obtained by, or on behalf of, Seller and/or any of its predecessors in title; for the avoidance of doubt, this shall include any studies, interpretations or analysis performed by consultants or other personnel which were made available to the seller or any of its predecessors in title.

    xii.    all of Seller's interest in any equipment, machinery or tools applicable to the Working Interest Assets not otherwise described above;

      xiii.    any other interests of the Seller in any oil and gas leases in Willacy County, Texas, and/or Kennedy County, Texas that may be sold pursuant to 11 U.S.C. §363(h);   and

b) <u>Litigation Assets</u>: The term "Litigation Assets" shall mean the following claims and causes of action:

    i.    all claims and causes of action specifically pled as a count in the First Amended Original Complaint filed at Docket Number 21 in Adv. No. 16-3187, *Engelhart et al. v. LaSara Ventures 1, LLC et al.*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Adversary Proceeding");

    ii.    all claims or causes of action of the Bankruptcy Estates arising from or related to the assets described in paragraph 1(a) above, and all subparts thereof, now existing and/or hereafter discovered, and including for example but without limitation any claims under 11 U.S.C. §550 against subsequent transferees, and without limitation as to the identity of any additional defendant(s);

    iii.    all claims or causes of action or defenses, if any, of both bankruptcy estates respecting that certain Conveyance, Assignment and Bill of Sale from BLAKEnergy, Ltd. *et al.* to Risco La Sara, LLC ("Assignment"), filed in Book 620, Page 1788, *et seq.* of the real property records of the Willacy County, Texas, and the Completion Payment provided for in paragraphs 3.6 and 3.8 of that certain Asset Purchase Agreement, referenced in the Assignment, between BLAKEnergy, Ltd., et al and Risco La Sara, LLC.

    iv.    but save and except any other claims not otherwise conveyed herein that the Trustee possesses, or may discover, including, but not limited to, claims against other parties who (a) are not currently defendants in the Adversary Proceeding and who are not successors, heirs or assigns of such current defendants (but not as to limit the scope of clause (ii)) above and (b) claims against any parties therein but arising from acts and/or occurrences not (x) expressly stated in the First Amended Original Complaint and/or (y) not within the scope of §4(b)(ii) above. By way of example only, and not limitation, this exclusion includes, but is not limited to, avoidance claims related to: (a) funds paid by NNMC, Ltd. under that certain Net Profits Participation Agreement dated October 1, 2014, between NNMC, Ltd, and Primrose La Sara, LLC; or (b) funds formerly on deposit with the Texas Railroad Commission for the account of La Sara Operating Company, LLC.

2.    The Sale Motion was properly served on the Debtors; counsel for the Debtors; the Trustee; the United States Trustee; all creditors; all parties in interest and all persons entitled to notice;

3.    The relief sought in the Sale Motion was either unopposed or all objections thereto resolved by agreement;

4.    On February 10, 2017, the Court conducted an auction sale of the Assets and found that the highest bid was submitted by Tennyson Energy Investment Group, LLC ("Tennyson" or "Buyer") in the amount of $1,340,000 ($690,000 allocated to Litigation Assets and $650,000 allocated to Working Interest Assets) (the "Tennyson Bid"). The Court found that the second highest bid was from Humid Oil Company, LLC ("Humid") for $1,330,000 ($700,000 allocated to the Litigation Assets and $630,000 allocated to Working Interest Assets) (the "Humid Bid").

5.  Based on the applicable law, any evidence adduced by the parties, the arguments of counsel, and the entire record in this bankruptcy case, the Court finds that the Tennyson Bid is the highest and best offer for the Assets and the Trustee is hereby authorized to close the sale of the Assets to Tennyson as set forth herein;

## Jurisdiction and Venue

6.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Sale Motion and the related proceedings are core proceedings under 28 U.S.C. § 157(b). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

7.  The statutory predicates for the relief sought in the Sale Motion are 11 U.S.C. §§ 105(a), 363 and 365. The Sale Motion is governed procedurally by Federal Rule of Bankruptcy Procedure 6004.

## Notice

8.  As evidenced by the certificate of service filed with the Court proper and timely notice of the Sale Motion, and any notice of hearing thereon if applicable, has been provided to all parties entitled to notice thereof, in compliance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Court. Such notice constitutes good and sufficient notice under the particular circumstances. No other notice need be given for the granting of the relief requested in the Sale Motion or entry of this Order.  A copy of the Sale Motion and notice of the hearing also were served upon all landowners and/or mineral lessors as set forth in the Supplemental Certificate of Service filed by the Trustee.

9.  A reasonable opportunity to object or be heard with respect to the Sale Motion has been afforded to all interested persons and entities, including (a) all parties on the operative official service list maintained in this bankruptcy case, (b) the Office of the United States Trustee, (c) the Trustee, (d) known creditors of the Debtor holding liens or security interests in the Assets, if any (e) all applicable federal, state, and local regulatory or taxing authorities, recording offices, or any governmental entity that have a reasonably known interest in the relief requested in the Motion, (f) all landowners and/or mineral lessors, and (g) all entities who have filed a notice of appearance and request for service of papers in this bankruptcy case.

ACCORDINGLY, THE COURT ORDERS THAT:

10. The Trustee's sale of the Assets to Tennyson is approved pursuant to 11 U.S.C. §§ 105(a) and 363 (b), (f) and (h)

11. The Trustee is authorized under 11 U.S.C. §§ 105(a), 363 and 365 to perform her obligations under this Order and to execute such other documents and take such other actions that are reasonably necessary to effectuate the transaction contemplated by this Order.

12. The Trustee is hereby AUTHORIZED to sell the Assets to Tennyson for the aggregate sum of $1,340,000 with $690,000 allocated to Litigation Assets and 650,000 allocated to Working Interest Assets on the terms and conditions set forth in the attached Exhibit "A."  In addition to any term and/or condition stated in Exhibit A, the Assets are sold:

a. free and clear of liens and claims pursuant to 11 U.S.C. § 363(b) and (f), with all such liens and claims attaching to the proceeds of the sale in their original order of priority, with the same validity, force and effect which they now have against the Assets;

b. The Assets include any other interests of the Seller in any oil and gas leases in Willacy County, Texas, and/or Kennedy County, Texas that may be sold pursuant to 11 U.S.C. §363(h);

c. **AS IS, WHERE IS, with any and all latent and patent defects; Buyer has been fully responsible for making its own evaluation and determination as to any aspect of the Assets; Buyer acknowledges that, having been given the opportunity to inspect and evaluate the Assets, said Buyer has relied solely on said Buyer's own investigation and not on an information provided by Seller;**

d. All persons holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' Business prior to the Closing Date, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of the foregoing's affiliates, successors, or assigns, their property or the Assets, such persons' or entities' Liens, Claims, or interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its Affiliates, its successors, assets or properties, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its Affiliates, its successors, assets or properties, (c) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser, its Affiliates, its successors, assets, or properties, (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, its Affiliates or its successors, (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof, or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets. Upon the Closing, each creditor is authorized and directed, and the Purchaser is hereby authorized on behalf of each of the Debtors' creditors, to execute such documents and take all other actions as may be necessary to release Liens, Claims, and other interests in or on the Assets, but only to the extent of the Trustee's and Estates' interests in such Assets (except Permitted Encumbrances and Assumed Liabilities or as otherwise provided in this Sale Order), if any, as provided for herein, as such Liens, Claims, and other interests may have been recorded or may otherwise exist. Notwithstanding anything contained in this Order to the contrary, nothing contained in this Order shall affect, impair, or release any valid, subsisting, and/or enforceable statutory lien against any interest in the Working Interest Assets or Properties owned by a non-Debtor party, and all such liens and claims remain unabridged by this Order.

    e. The sale is subject (i) to the Mineral Owners' (as that term is defined in Docket Number 153) repudiation of the Crane Mallard and Roadrunner Leases, as set out in their Objection to Trustee's Expedited Motion for Authority to Sell Property Free and Clear of Liens and Claims and for Other Relief filed at Docket Number 117 in Case No. 16-30822, and (ii) the Mineral Owners' claim that the Seismic Data (as that term is used in Docket Number 153) may not be assigned to the Buyer;

    f. The sale is subject to the contentions of BLAKEnergy, Ltd. that the Working Interest Assets are subject to reservations by BLAKEnergy, Ltd. contained in that certain Conveyance, Assignment and Bill of Sale from BLAKEnergy, Ltd. et al to Risco La Sara, LLC, filed in Book 620, Page 1788, et seq of the Official Records of Willacy County, Texas, and the Completion Payment and area of mutual interest provided in that certain Asset Purchase Agreement between BLAKEnergy, Ltd., et al and Risco La Sara, LLC, referenced in and of even date with such Assignment and Bill of Sale, and that the Working Interest Assets may not be sold free and clear of such Completion Payment and area of mutual interest. MK Operating Company, LLC disputes this contention. This issue, among others, is subject to litigation in Adv. No. 16-03230, *MK Operating Company, LLC v. Blake Energy Ltd.*, pending in the US Bankruptcy Court. The sale of the Assets is subject to all rights of BLAKEnergy, Ltd., if any, the outcome of the referenced adversary proceeding and appeal thereof and any matters appearing in the public record.

    13. The proceeds from any approved sale shall be deposited into either the registry of the Court or held in escrow by the closing agent, at the election of the Trustee, until further order of the Court.

    14. The Trustee, in her capacity as Trustee of both estates, is AUTHORIZED to and does hereby, ASSUME all interests of both estates under that Model Form Operating Agreement dated January 5, 2011 and related Memorandum of Operating Agreement and Financing Statement filed in the Real Property Records of Willacy County, Texas under Clerk's File Number 20110000179, Book 0620, Page 1800 on January 21, 2011, (the "JOA") and ASSIGNS all such interests to Tennyson; ***provided***, however, nothing contained herein limits, waives, or in any manner diminishes any facts, claims, issues, rights, remedies, or defenses (collectively, "Adverse Interests") of the Trustee and/or Tennsyon under the JOA or against MK Operating, LLC, including but not limited to any Adverse Interests that might be asserted by the Trustee and/or Tennyson in Adv. No. 16-03187, Adv. No. 16-03230, this Bankruptcy Case, or in any other forum, action, or proceeding. Any cure obligations of either estate is subject to the prior and any subsequent Order of this Court.

    15. Notwithstanding the foregoing, the assumption and assignment of the JOA is expressly conditioned on the payment of all cure claims associated with the assumption and assignment of the JOA ("Cure Claims"). The proceeds from any approved sale of the Assets shall be placed into either the registry of the Court, held in escrow, or in the Trustee's trust account., at the election of the Trustee, pending, among other things, resolution of any asserted Cure Claims. Upon resolution of such Cure Claims, whether by agreement of the Trustee and the party asserting such Cure Claim and subsequent order or by other Order of the Court, the Trustee shall pay no later than business days than three (3) business days after such order becomes a final order or such agreement or resolution of the parties, pay in cash 100% of the Cure Claim to the party to whom such cure claim is owed. For the avoidance of doubt, Cure Claims shall be paid before any distributions are made from the registry of the Court or any escrow account, as applicable. In the event the Trustee fails to pay 100% of the Cure Claims associated with the JOA, any assumption and assignment of the JOA shall be null and void.

Sale Order - Exhibit A

## AMENDED ASSET PURCHASE AGREEMENT

1. **PARTIES**: Subject to the terms stated herein, Seller agrees to sell and assign, transfer, set over and/or convey to Buyer the Assets described in Paragraph 2. Buyer agrees to buy the Assets from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

Seller: Eva S. Engelhart, Trustee of the Chapter 7 Estates of Primrose La Sara, LLC, Case No. 16-30822 (the "Primrose Estate" or "Primrose Case") and La Sara Operating Company, LLC, Case No. 16-30453 (the "La Sara Estate" or "La Sara Case") (the Primrose Estate and the La Sara Estate together are referred to hereinafter as the "Bankruptcy Estates" or "Bankruptcy Cases"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division and not in her individual capacity ("Seller").

Address: 7700 San Felipe, Suite 550, Houston, Texas 77063
Phone: (713) 626-1200    Fax: (713) 623-6014
email: eengelhart@rossbanks.com

Buyer: Tennyson Energy Investment Group, LLC
c/o Jeff Carruth / Weycer Kaplan, Pulaski & Zuber, P.C.
Address: 3030 Matlock Rd., Suite 201
Arlington, TX 76015
Phone: (713)341-1158    Fax: (866)666-5322
email: jcarruth@wkpz.com

2. **ASSETS**: All right, title and interest of Seller in and to the following identified Assets (hereafter the "Assets") pursuant to that certain order of the Bankruptcy Court authorizing such sale of the Assets to be entered in the Primrose and La Sara Cases respectively. , which sale shall be free and clear of liens and claims pursuant to 11 U.S.C. §§ 363(b) and (f).

   a) Working Interest Assets: The term "Working Interest Assets" shall mean any and all oil and gas leases in which Seller possess any right, claim, or interest in Willacy County, Texas, and/or Kennedy County, Texas and including but not limited to the 34.5% working interest(s) referenced and described in Schedule B (Docket No. 13) in the Primrose Case (collectively, the "Working Interest Assets") and in various other pleadings filed in the Bankruptcy Case; *save and except* interests that run with the land. The Working Interests Assets shall further include the following:

      i. the interests in any units or pooled or communitized lands arising on account of the Working Interests Assets; having been unitized or pooled into such units or with such lands (Seller's interests in such units, the "Unit Interests") (the Working Interest Assets and the Unit Interests are referred to hereinafter as the "Properties");

      ii. all existing (on or after the date of this Agreement but prior to closing) wells on or attributable to the Properties;

      iii. all saltwater disposal leases and all saltwater disposal wells located on such saltwater disposal leases contained within the Properties, and any other interest of Seller in any saltwater disposal wells;

ASSET PURCHASE AGREEMENT — Page 1
FINAL - APA - Non-Stalking Horse

iv. the interest of the Seller in, to, and against all production facilities, structures, tubular goods, well equipment, lease equipment, production equipment, pipelines, inventory, and all other personal property, fixtures and facilities to the extent appurtenant to or used in connection with the Properties (the "Facilities");

v. to the extent assignable at no cost to Seller, the interest of the Seller in, to, and against all permits, licenses, servitudes, easements, rights-of-way, surface fee interests and other surface use agreements to the extent used in connection with the ownership or operation of the Properties or the Facilities;

vi. the hydrocarbons produced from or attributable to the Properties from and after closing and all hydrocarbons produced therefrom prior to closing that are in storage prior to sale and that are upstream of the sales metering point as of closing;

vii. all surface rights related to or appurtenant to the Properties;

viii. the interest of the Seller in, to, and against any insurance claims or indemnity rights relating to the Properties;

ix. any production or payment rights associated with the Working Interest Assets whenever accrued not otherwise described above;

x. the interest of Seller in the current joint operating agreement ("JOA") covering and applicable to the Working Interest Assets;

xi. any books, records, or other documents related to the Properties in the possession, custody, and/or control of the Seller including but not limited to:

1. the well schematics, well bore logs;

2. all records, files, contracts, orders, agreements, permits, licenses (including all 2D and 3D seismic licenses and data pertaining to the Properties), easements, maps, data, schedules, reports and logs relating to the Properties;

3. all intellectual property, including all copyrights, patents and trademarks, owned, used or licensed by Seller in connection with the Properties and used or held for use exclusively in the ownership and operation of the Properties, including, for the avoidance of doubt all seismic, geological, geochemical or geophysical data owned or licensed by Seller and any of Seller's interpretations of such data, including all interpretations and analysis obtained by, or on behalf of, Seller and/or any of its predecessors in title; for the avoidance of doubt, this shall include any studies, interpretations or analysis performed by consultants or other personnel which were made available to the seller or any of its predecessors in title.

xii. all of Seller's interest in any equipment, machinery or tools applicable to the Working Interest Assets not otherwise described above;

    a. The Litigation Assets: $ 690,000.00
    b. The Working Interest Assets: $ 650,000.00

                Total      $ 1,340,000.00

d) Non-monetary consideration: None.

4. **GOOD FAITH DEPOSIT:**

   a) Concurrent with the execution of this contract and provision thereof to the Seller, Buyer shall deposit with Seller $100,000.00 as a "Good Faith Deposit," which will be applied to the Sales Price at closing. The Good Faith Deposit shall be paid by certified or bank check (or other form acceptable to Seller is her sole and absolute discretion) payable to Eva. S. Engelhart, Trustee. If Buyer is not the Successful Bidder or Backup Successful Bidder that closes on the sale of the Assets, all Good Faith Deposit will be returned to Buyer within ten (10) business days after closing by the Successful Bidder without offset of any kind.

   b) If Buyer fails to deposit the Good Faith Deposit as required by this contract, then this contract will immediately terminate and be of no further force and effect.

5. **ASSETS CONDITION AND OPPORTUNITY TO INSPECT:**

   a) BUYER ACKNOWLEDGES THAT SELLER MAKES NO REPRESENTATION, WARRANTY, STATEMENT, OR OTHER ASSERTION, EXPRESS OR IMPLIED, WITH RESPECT TO THE ASSETS TO BE SOLD, IT'S MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

   b) Buyer will take the Assets **AS IS, WHERE IS**, with any and all latent and patent defects. Buyer shall be fully responsible for making its own evaluation and determination as to any aspect of the Assets. Buyer acknowledges that, having been given the opportunity to inspect and evaluate the Assets, said Purchaser will be relying solely on said Purchaser's own investigation and not on any information provided by Seller.

6. **CLOSING:** The closing of the sale will be no earlier than 10:00 AM central time on the fifth (5th) business day following entry of an Order approving this agreement in the Bankruptcy Cases, unless the parties agree in writing to do it sooner (the "Closing Date"). If either party fails to close by the Closing Date, the non-defaulting party may exercise the remedies for in this agreement.

   a) At closing, Seller and Buyer will execute and deliver all conveyance and assignment related documents required to consummate this agreement in a form acceptable to the parties.

   b) At closing, Buyer will pay the Sales Price in good funds acceptable to the Seller, unless previously paid in full.

7. **DEFAULT:**

   a) If Buyer fails to comply with this Contract, Buyer is in default and Seller may elect to do any or all of the following or a combination thereof:

      i. retain the Good Faith Deposit as damages for Buyer's breach; sell the Assets to another buyer, and sue for any and all other damages that may result from Buyer's breach;
      ii. retain the Good Faith Deposit and terminate the Contract with Buyer;
      iii. seek to enforce specific performance; or seek other relief as may be provided by law.

   b) If Seller fails to comply with this Contract, Seller is in default and Buyer may as its sole and exclusive remedy, either:

      i. terminate this Contract and receive the Good Faith Deposit as liquidated damages, thereby releasing the parties from this Contract; or
      ii. enforce specific performance only.

   c) All rights and remedies of Seller under this Paragraph will be cumulative, and none will exclude any other right or remedy provided by law or by any other provision of this Contract. All rights and remedies of Seller may be exercised and enforced concurrently and whenever, and as often, as occasion for their exercise arises.

8. **ATTORNEY'S FEES:** If Buyer or Seller is a prevailing party in any legal proceeding brought under or with relation to this Contract or this transaction, such party is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorneys' fees. This Paragraph survives termination of this Contract.

9. **AGREEMENT OF THE PARTIES:**

   A. This Contract contains the entire agreement of the parties and may not be changed except in writing. In the event any covenant, condition or provision herein contained is held to be invalid by final judgment of any Court of competent jurisdiction, the invalidity of such covenant, condition or provision shall not in any way affect any other covenant, condition or provision herein contained, which shall continue in full force and effect.

   B. If this Contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

   C. Buyer may not assign this Contract.

   D. Jurisdiction regarding any disputes regarding this agreement shall be exclusively in the United States Bankruptcy Court and case in which Seller serves as Chapter 7 Trustee.

   E. All obligations of the parties created hereunder are performable in Harris County, Texas. In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, and unenforceable in any respect, such invalidity, illegality, or unenforceability

ASSET PURCHASE AGREEMENT --- Page 5
FINAL - APA - Non-Stalking Horse

shall not affect any other provision hereof, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. This Contract constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter and cannot be changed except by their written consent. Words of any gender used in this Contract shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise.

F. As part of the sale of the Property, Seller shall assume and assign to Buyer all of its right, title and interest in the JOA. Seller shall be responsible for any cure costs associated with assumption of the JOA, if any, without prejudice to Seller's right to object to the amount of any cure payment.

G. Buyer will assume all obligations associated with the Property and the JOA liabilities on and after the Closing Date. Purchaser will not assume any obligations associated with the Property and the JOA liabilities that existed or accrued prior to the Closing Date.

H. To any extent necessary under applicable law in order to maintain any of the Litigation Assets to be assigned, and at the discretion of the Buyer, the Seller shall remain a party with respect to the prosecution of any of the Litigation Assets. The Litigation Assets and/or the value of the Litigation Assets shall be conveyed in a manner as to maintain standing or any other rights that are necessary to preserve and prosecute the Litigation Assets for the use and benefit of the Buyer and/or to maintain standing in the Bankruptcy Court; and if necessary in order to preserve venue, jurisdiction, and the ability to enter final orders in the Bankruptcy Court, the assignment of the claims and causes of action and the Adversary Proceeding reference and described in Section 2 above shall be only an assignment of the proceeds, remedies, and recovery of same, and Seller agrees to amend and/or supplement this Agreement and/or execute such other and further documents as may be necessary to effectuate the intentions of this Paragraph H.

I. Promptly after closing, Seller will provide to Purchaser any books, records, or other documents related to the Subject Assets that are in the possession, custody, and/or control of the Seller, including the products of the Seller's investigation and/or diligence and/or discovery products obtained through and until the Effective Date. Seller will also direct counsel to provide to Purchaser any attorney work product related to the Subject Assets.

10. This agreement is subject to bankruptcy court approval.

11. Time is of the essence.

*{Remainder of page intentionally blank}*

Case 16-30453   Document 101-1   Filed in TXSB on 08/18/17   Page 12 of 12
Case 16-30822   Document 165   Filed in TXSB on 02/22/17   Page 15 of 15
Case 16-30822   Document 145   Filed in TXSB on 01/16/17   Page 58 of 50

Seller:

By: _____

Eva S. Engelhart, Trustee and not individually

Date: 2/17/17